# Illinois Official Reports

## Appellate Court

┌─────────────────────────────────────────────────┐
│                                                 │
│    *In re A.S.*, 2014 IL App (3d) 130163        │
│                                                 │
└─────────────────────────────────────────────────┘

| | |
|---|---|
| Appellate Court Caption | *In re* A.S., A Minor (The People of the State of Illinois, Petitioner-Appellee, v. Spencer B., Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-13-0163 |
| Rule 23 Order filed<br>Motion to publish<br>allowed<br>Opinion filed | March 11, 2014<br><br>April 30, 2014<br>April 30, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court did not abuse its discretion in removing respondent's son from respondent's custody and naming DCFS as the child's guardian, since placement with respondent was not in the child's best interest, where the child had recently been adjudicated neglected based on the injurious environment related to his mother and placed with respondent, but then respondent's previous involvement with DCFS surfaced and the caseworker from respondent's case informed the caseworker in the instant case, *inter alia*, that respondent's family, including his wife and father-in-law, were hostile and uncooperative, the wife had unresolved substance abuse, mental health and parenting issues, and respondent had been arrested for cannabis possession. |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 12-JA-189; the Hon. Mark E. Gilles, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Timothy D. McCarthy, of Peoria, for appellant. |
|---|---|
| | Jerry Brady, State's Attorney, of Peoria (Richard T. Leonard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | |
| Panel | JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.<br>Justices McDade and O'Brien concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a dispositional hearing, the circuit court made A.S. a ward of the court and found his mother dispositionally unfit. The circuit court found A.S.'s father, respondent Spencer B., to be dispositionally fit and granted him guardianship of A.S. Subsequently, after reopening the dispositional hearing for additional evidence, the circuit court modified its dispositional order, removing A.S. from respondent and granting guardianship to the Department of Children and Family Services (DCFS). On appeal, the respondent argues that the circuit court's finding that it was in the best interest of A.S. to remove him from respondent and name DCFS as his guardian was against the manifest weight of the evidence. We affirm.

¶ 2                                    FACTS

¶ 3    On August 7, 2012, the State filed a petition for wardship alleging that four-year-old A.S. was a neglected minor in that his environment was injurious to his welfare. The allegations pertained to solely to A.S.'s mother, Brittany S. On December 6, 2012, A.S. was adjudicated neglected.

¶ 4    On January 24, 2013, a dispositional hearing report was filed. The report was completed by a caseworker from the Center for Youth and Family Solutions, Meagan Novak. The report indicated that the respondent and his wife, Kelsey B., fully cooperated with all of the agency's requests and were committed to assuring the safety and stability of their family. The report also indicated that there was no indication that the respondent would attempt to reestablish a relationship with Brittany S. The respondent was honest about his criminal history and prior involvement with DCFS. It was recommended that the respondent be found fit and A.S. remain in his care.

¶ 5    On January 24, 2013, a dispositional hearing took place. The circuit court entered a dispositional order finding that it was in the best interest of A.S. to make him a ward of the

court. The circuit court found that Brittany S. was dispositionally unfit and that respondent was fit. The circuit court placed A.S. in the care of respondent and named respondent guardian of A.S.

¶ 6 The respondent was ordered to cooperate with DCFS, comply with the terms of the service plans, and correct the conditions which required the child to be in care. He was also ordered to: (1) execute all authorizations for release of information requested by DCFS; (2) obtain and maintain stable housing conducive to the safe and healthy rearing of A.S.; (3) provide the caseworker with any change in address within three days; and (4) provide the name, date of birth, social security number, and relationship of any individual DCFS believed would affect A.S.

¶ 7 On January 31, 2013, Novak performed a scheduled home visit with the respondent, Kelsey, and A.S. Also present were Kelsey's father, John Godez, and A.S.'s stepsister G.B., who is the daughter of Kelsey and the respondent.

¶ 8 On February 7, 2013, the State's Attorney's office filed a "Motion to Reopen Dispositional Hearing and/or Motion to Modify Guardianship." The motion requested that the court reopen the dispositional hearing for additional evidence to be presented or, alternatively, modify guardianship of A.S. to DCFS with the right to place and consent to medical treatment.

¶ 9 On February 21, 2013, Novak filed a "status alert." The status alert indicated that the respondent and his family had previous involvement with DCFS's intact family services. The case was closed because the family was reported as having relocated to Iowa. Following the dispositional hearing in this case, Jean Marlow, the DCFS caseworker previously involved with the family, contacted Novak. Marlow described the family as uncooperative and hostile. Marlow indicated that Kelsey had unresolved substance abuse issues and was recommended for substance abuse assessment and treatment, a mental health evaluation and treatment, and parenting skills classes. Marlow reported that respondent was arrested on April 9, 2012, for possession of cannabis. She also indicated that the respondent and Kelsey were unwilling to sign any consents, verbally attacked caseworkers, and threatened to sue Marlow and DCFS.

¶ 10 The status alert also indicated that on January 29, 2013, Novak held a telephone conference with Kelsey to discuss Kelsey's concerns regarding her family's juvenile court involvement. Kelsey expressed continued frustration with not being allowed access to the courtroom during proceedings involving A.S., even though the proceedings profoundly impacted herself and G.B. She felt "bullied" by DCFS. Novak reported that Kelsey "presented" as unwilling to allow unannounced home visits due to inconvenience. An announced home visit was scheduled for January 31, 2013.

¶ 11 On February 21, 2013, Novak filed an addendum to the status alert, which included a case note regarding the home visit that took place on January 31, 2013. The addendum indicated that during the home visit, A.S. and his stepsister, G.B., appeared to be clean, appropriately dressed, and free from signs of physical abuse. A.S.'s bedroom was clean and adequately furnished with a bed and appropriate toys for a child. It was noted that: (1) the respondent and Kelsey would not sign consents to discuss the case in front of each other; (2) the tone in the home was hostile and caseworkers did not feel welcomed; and (3) respondent may have been under the influence of drugs or alcohol because his eyes were bloodshot and his eyelids

appeared partially open, red, and swollen. Initially, Kelsey would not allow the caseworkers to speak with A.S. alone because he suffered from behavioral problems and mental illness. After Kelsey and respondent telephoned respondent's attorney, they allowed the caseworkers to speak with A.S. alone. A.S. indicated that he loved his stepsister. A.S. reported being a good boy and not being harmed by anyone in the home. He said the three scabs on his face were from his stepsister, G.B. Kelsey declined an offer for A.S. to receive counseling services because he was too young.

¶ 12    The addendum also indicated that during the time Kelsey and respondent were telephoning respondent's attorney, Godez told caseworkers that they were violating the respondent's constitutional rights and asked caseworkers about their knowledge of the Illinois state constitution. He also questioned whether the caseworkers were parents. Novak indicated that the question was inappropriate and irrelevant. Novak also indicated that she felt threatened by Godez and the caseworkers would not return to the home without a police escort.

¶ 13    Since the home visit, Kelsey reported her dissatisfaction with the caseworkers and their agency. Kelsey believed that agency workers lied to police and the court. She also believed that the caseworker's supervisor had personal issues against her family and abused her power. Kelsey sent Novak up to six emails per day and called her supervisor five times within an hour. Kelsey was informed of the proper procedures for filing a grievance with the agency.

¶ 14    The addendum included additional information regarding the family's previous intact services with DCFS. Marlow's final consultation note indicated that if the family was indicated again for issues of drug or alcohol abuse leading to the neglect of the children, then the case should be referred for court involvement. It was also noted that: (1) respondent did not participate in the recommended substance abuse evaluation, substance abuse treatment, or parenting skills education; (2) after undergoing a substance abuse evaluation on January 10, 2012, Kelsey met the diagnostic criteria for opioid dependence and cannabis abuse; and (3) Kelsey failed to obtain the recommended treatment and failed to understand mental illness and its effects on parenting and relationships.

¶ 15    On February 21, 2013, a hearing took place on the State's motion to reopen the dispositional hearing or modify guardianship. The parties stipulated that Novak would testify consistently with the addendum to the status alert. Novak additionally testified that a few days after the initial dispositional hearing, she was informed that during the family's prior involvement with DCFS, the respondent and Kelsey were uncooperative and refused to sign consents. Without consents being signed, their level of cooperation with recommended services could not be provided.

¶ 16    On cross-examination, Novak testified that on January 29, 2013, she was able to schedule a home visit. A home visit was required so she could observe A.S., speak with A.S., and monitor A.S. for any signs of abuse or neglect as part of DCFS's standard protocol. Neither respondent nor Kelsey refused to have the home visit. On January 31, 2013, Novak arrived at the respondent's home and was allowed inside. After respondent spoke with his attorney, Novak was allowed to speak with A.S. The respondent has offered to sign a release for Novak to speak with A.S.'s pediatrician.

¶ 17　　At the conclusion of the evidence, the assistant State's Attorney requested that the court order additional services for the respondent, including a drug and alcohol evaluation, drug testing, and counseling. The guardian *ad litem* requested that A.S. be removed from the respondent's care. The respondent's attorney objected to the removal of A.S., indicating that there had been no prior pleadings requesting A.S. be removed and that the circuit court did not have the power to order removal at that juncture in the case. The circuit court overruled the objection, finding that placement with the respondent was detrimental to the best interests of A.S.

¶ 18　　In its written order, the trial court indicated, "Behavior of [Kelsey] and her father and [respondent's] inability to control behaviors was irrational, unwarranted and concerning." The court additionally indicated, "Court finds immediate and urgent necessity that [A.S.'s] placement with [respondent] is terminated as it is not in child's best interest. The Department and Agency made reasonable efforts to prevent removal of child from the home." The circuit court appointed DCFS as the guardian of A.S.

¶ 19　　Respondent appeals.

¶ 20　　　　　　　　　　　　　　　ANALYSIS

¶ 21　　On appeal, the respondent argues that the court's decision to remove A.S. from his care and name DCFS as guardian was against the manifest weight of the evidence. We will not reverse a circuit court's dispositional determination unless the factual findings are against the manifest weight of the evidence or the circuit court abused its discretion by selecting an inappropriate dispositional order. *In re J.C.*, 396 Ill. App. 3d 1050 (2009).

¶ 22　　Pursuant to the Juvenile Court Act of 1987 (Act), once a child is adjudicated abused, neglected or dependent, the court must hold a dispositional hearing to determine whether it is in the child's best interests to be made a ward of the court and the proper disposition best serving the health, safety and interests of the minor and the public. 705 ILCS 405/2-21, 2-22 (West 2012); *In re Austin W.*, 214 Ill. 2d 31 (2005). Only after a finding that it is in the best interest of the child to make him a ward of the court can the court issue a dispositional order affecting the future conduct of the parents. 705 ILCS 5/2-23 (West 2012); *In re C.L.*, 384 Ill. App. 3d 689 (2008).

¶ 23　　A minor found to be neglected and made a ward of the court may be: (1) continued in the care of his parent, guardian or legal custodian; (2) restored to the custody of his parent, guardian or legal custodian; (3) ordered partially or completely emancipated; or (4) placed in accordance with section 2-27 of the Act. 705 ILCS 405/2-23(1)(a) (West 2012). Under section 2-27, the circuit court may place the minor with DCFS:

> "If the court determines and puts in writing the factual basis supporting the determination of whether the parents, guardian, or legal custodian of a minor adjudged a ward of the court are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and that the health, safety, and best interest of the minor will be jeopardized if

- 5 -

the minor remains in the custody of his or her parents, guardian or custodian ***[.]" 705 ILCS 405/2-27 (West 2012).

Under certain circumstances it is not necessary that the natural parent be found unfit or be found to have legally forfeited his rights to custody, if it is in the child's best interest that he be placed in the custody of someone other than the natural parent. *Austin W.*, 214 Ill. 2d 31; *In re Y.A.*, 383 Ill. App. 3d 311 (2008) (a finding of unfitness was not necessary if it is in the minor's best interest to do so).

¶ 24        Although dispositional orders are generally considered "final" for appeal purposes, they are subject to modification. *Austin W.*, 214 Ill. 2d 31. The Illinois Supreme Court has indicated:

> "[O]nce a child has been made a ward of the court and a dispositional order has been entered, the court may, at any time, vacate the original dispositional order and enter any other dispositional order that it could have entered under section 2-23(a) of the Act, thereby effecting a change in the custody and guardianship of the minor, if the court finds that to do so would be in the best interests of the child." *Austin W.*, 214 Ill. 2d at 44.

¶ 25        Here, the circuit court found that A.S. was neglected. The case proceeded to a dispositional hearing, and the circuit court found that it was in the best interest of A.S. to make him a ward of the court. The court found that respondent was fit and named him as guardian of A.S. Due to its wardship of A.S., the court had authority to direct the respondent to cooperate with DCFS, provide caseworkers with certain information, execute releases, comply with the terms of the service plans, obtain stable housing, and correct the conditions which required A.S. to be in care. See *C.L.*, 384 Ill. App. 3d 689 (when one parent is found dispositionally unfit and the other parent is without fault, a court may not interfere unless the court determines it is in the best interest of the minors to become wards of the court); see also 705 ILCS 405/2-28 (West 2012); *In re S.S.*, 313 Ill. App. 3d 121 (2000) (a fit parent may maintain custody of a minor while the circuit court exercises its supervisory powers over the child's relationship with the other parent). There are no arguments on appeal regarding the circuit court's finding that it was in A.S.'s best interest to make him a ward of the court.

¶ 26        At the hearing on the State's motion to reopen the dispositional hearing, the circuit court determined that it was in A.S.'s best interest to terminate placement with the respondent because respondent was unable to control the irrational and unwarranted behavior of his wife and father-in-law. In light of the evidence of prior substance abuse and possible mental health issues in the home, a proper assessment of A.S.'s living situation was imperative to determine the appropriate services and care to be provided for A.S. and the family. The evidence indicated that the negative behaviors of the respondent's wife and father-in-law inhibited the caseworkers' ability to make such a determination.

¶ 27        Therefore, based on the evidence of circumstances surrounding this case, the circuit court's finding that it was in A.S.'s best interest to terminate placement in the respondent's custody was not against the manifest weight of the evidence. Additionally, removing A.S. from the respondent's custody and naming DCFS as his guardian was an appropriate dispositional order and was not an abuse of the trial court's discretion.

¶ 28                    CONCLUSION

¶ 29            For the foregoing reasons, we affirm judgment of the circuit court of Peoria County.

¶ 30            Affirmed.