**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 210395-U

Order filed December 23, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| *In re* C.N., | ) | Appeal from the Circuit Court |
|     a Minor | ) | of the10th Judicial Circuit, |
| | ) | Peoria County, Illinois. |
| (The People of the State of Illinois, | ) | |
| | ) | |
|     Petitioner-Appellee, | ) | Appeal No. 3-21-0395 |
| | ) | Circuit No. 20-JA-504 |
|     v. | ) | |
| | ) | |
| Crystal C.B., | ) | The Honorable |
| | ) | Timothy J. Cusack, |
|     Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE LYTTON delivered the judgment of the court.
Justices Holdridge and O'Brien concurred in the judgment.

**ORDER**

¶ 1     *Held*: Mother failed to establish her rights were violated by her alleged absence from courtroom during juvenile court hearing where court order stated mother was present and nothing in appellate record contradicted order.

¶ 2     Respondent is the mother of C.N. In October 2020, the State filed a juvenile petition, alleging that C.N. was a neglected minor. In January 2021, the court adjudicated that C.N. was neglected and found respondent unfit. The court granted guardianship of C.N. to the Illinois Department of Children and Family Services (DCFS) and made C.N. a ward of the court. In August

2021, the trial court entered an order naming C.N.'s father as her guardian, discontinuing the court's wardship over C.N., and closing C.N.'s case. Respondent appeals, arguing that her rights were violated because she was denied the right to be present at the case closure hearing. We affirm.

¶ 3                                                    BACKGROUND

¶ 4         On October 26, 2020, the State filed a petition for adjudication of neglect, alleging that C.N., who was born in 2012, was neglected in that her environment was injurious to her welfare based, in part, on the following: (1) on October 22, 2020, respondent took C.N. to downtown Peoria and became so intoxicated that she could not communicate with police officers and had to be transported to a hospital for treatment; (2) on August 19, 2020, with C.N. in her vehicle, respondent intentionally drove her vehicle into another vehicle and attempted to strike an individual with her vehicle; (3) on May 25, 2020, with C.N. in her vehicle, respondent was involved in a traffic accident and arrested for DUI; (4) the family was involved in a juvenile court case filed in 2013, "which was based in part on the mother's substance abuse problems and domestic violence between the mother and father[;]" (5) the parental rights of C.N.'s father were previously terminated; and (6) respondent was previously indicated by DCFS for Substantial Risk of Physical Injury/Environment Injurious to Health and Welfare and Inadequate Supervision for the May 25, 2020 DUI incident.

¶ 5         On January 13, 2021, the trial court held adjudicatory and dispositional hearings. Thereafter, the court entered orders finding C.N. neglected and respondent unfit based on "unresolved substance abuse and domestic violence issues." The court made C.N. a ward of the court and named DCFS her guardian, with the right to place. The court ordered respondent to complete various tasks, including performing random drug drops four times monthly, submitting to a psychological examination and following any recommendations made, successfully

2

completing parenting and domestic violence courses, obtaining and maintaining stable housing, visiting her children as scheduled by DCFS, and using her best efforts to obtain and maintain employment. The court admonished both parents to cooperate with DCFS, complete the court-ordered tasks. and correct the conditions that required C.N. to be in care, or risk termination of their parental rights.

¶ 6        On February 22, 2021, C.N.'s DCFS caseworker filed a report stating that respondent had completed only one drug drop since the court's January 13, 2021,order even though she was ordered to complete weekly drops. Respondent completed anger management and parenting classes and was participating in outpatient drug/alcohol treatment and counseling but had not yet completed a domestic violence class or a psychological evaluation.

¶ 7        On March 8, 2021, C.N. began living with her father. On April 19, 2021, C.N.'s caseworker filed a report in which she expressed concerns about the stability of respondent's living arrangements because respondent was unemployed and did not have "a stable amount of income coming into her home." The caseworker reported that C.N. was doing "very well" with her father and loved living with him. The caseworker recommended that the court terminate wardship over C.N. and name her father as her guardian.

¶ 8        On April 21, 2021, the court entered an order removing DCFS as the guardian of C.N. and granting guardianship to C.N.'s father. The court continued the case to August 11, 2021, because respondent "request[ed] more time to try to attain fitness."

¶ 9        On August 4, 2021, C.N.'s caseworker filed a report with the court expressing concerns about respondent's lack of honesty and communication because respondent (1) failed to update the caseworker about what occurred at a court proceeding in Indiana on July 19, 2021, despite the caseworker instructing her to do so, (2) had not returned calls to her parenting coach for several

weeks; and (3) reported that C.N.'s father allowed her to have unsupervised visits with C.N., which C.N. and her father denied. According to the caseworker, respondent had a history of making untrue statements about C.N.'s father. Respondent's parenting coach also reported concerns that respondent was "not being truthful or honest with DCFS."

¶ 10 During the relevant reporting period, respondent completed 8 out of 14 required drug drops, which were all negative for illegal substances. Respondent failed to complete any of the four required drops in July 2021. The caseworker also expressed concern that respondent "does not have the means to provide a stable living" for C.N. because she "does not have employment or a steady income." C.N. continued to be "doing very well" in her father's home.

¶ 11 The court held a hearing on August 11, 2021. There is no transcript or report of proceedings from that hearing in the appellate record. Following the hearing, the court entered a case closure order, which listed both respondent and her attorney as "present." The court entered an order removing DCFS as C.N.'s guardian, naming C.N.'s father as her guardian, and terminating wardship over C.N. The court further found: "Mother remains unfit, and the Court retains jurisdiction over her fitness until the minors reach the age of 18." The court ordered C.N.'s case "closed" because permanency was achieved through reunification with her father.

¶ 12                                                              ANALYSIS

¶ 13 Parents have a statutory right to be present at juvenile court proceedings involving their children. 705 ILCS 405/1-5(1) (West 2020). Here, respondent contends that her rights were violated because she was not present in the courtroom during the court's August 11, 2021 hearing.

¶ 14 "[I]n order to support a claim of error on appeal the appellant has the burden to present a sufficiently complete record." *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001). "[T]he court of

review must have before it the record to review in order to determine whether there was the error claimed by the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984).

¶ 15 Where the issue on appeal relates to a hearing or proceeding, the issue cannot be reviewed absent a report or record of the proceeding. *Webster*, 195 Ill. 2d at 432. In the absence of a complete record on appeal, all doubts will be resolved against the appellant. *People v. Jennings*, 254 Ill. App. 3d 14, 20 (1993). "Allegations that are contained within a brief but are entirely outside the record cannot be considered on appeal." *Maxton v. Garegnani*, 255 Ill. App. 3d 291, 299 (1994).

¶ 16 A reviewing court "must presume that the common-law record is correct." *People v. Martinez*, 361 Ill. App. 3d 424, 427 (2005). Where the common-law record indicates that a party was present at a hearing, the common-law record is conclusive unless the report of proceedings shows otherwise. See *id*.

¶ 17 Here, the record contains no report of proceedings from the August 11, 2021 hearing supporting respondent's contention that she was not present. However, the common-law record contains the order entered by the trial court, which states that respondent was "present" at the hearing. In the absence of a report or record of proceedings establishing respondent's absence, we must presume that the trial court's order stating that respondent was present is correct. See *id*.

¶ 18 Because nothing in the record supports respondent's contention that she was not present for the hearing and the trial court's order affirmatively rebuts her claim, we find no violation of respondent's rights and affirm the trial court's order.

¶ 19 CONCLUSION

¶ 20 The judgment of the circuit court of Peoria County is affirmed.

¶ 21 Affirmed.