**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210396-U

Order filed January 12, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* Q.N., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| a Minor | ) | Peoria County, Illinois. |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-21-0396 |
| | ) | Circuit No. 20-JA-505 |
| v. | ) | |
| | ) | |
| Crystal C.B., | ) | The Honorable |
| | ) | Timothy J. Cusack, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court.
Justices Hauptman and McDade concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  In an appeal in a juvenile neglect case, the appellate court found that the biological mother failed to prove that her rights were violated by her alleged absence from the courtroom during a juvenile court hearing involving her minor child where the trial court's written order stated that the mother was present and nothing in the appellate court record contradicted the trial court's written order. The appellate court, therefore, affirmed the trial court's judgment.

¶ 2    The State filed a juvenile petition alleging that the minor child, Q.N., was a neglected minor and seeking to make the child a ward of the court. After hearings were held, the trial court found that the child was a neglected minor and that the child's biological mother—respondent, Crystal C.B.—was a dispositionally unfit parent. The trial court made the child a ward of the court and named the Department of Children and Family Services (DCFS) the child's guardian. Several months later, while respondent was still an unfit parent, the trial court made the child's biological father, Carl N. (Carl), the guardian of the child, terminated wardship, and closed the child's case. Respondent appeals, arguing that her rights were violated because she was denied the right to be present at the case closure hearing. We affirm the trial court's judgment.

¶ 3                                I. BACKGROUND

¶ 4    Respondent and Carl were the biological parents of the minor child, Q.N., who was born in May 2014. In October 2020, the family came to the attention of DCFS after it was reported that respondent had Q.N. with her in the downtown area of Peoria, Illinois, and was so intoxicated that she could not walk, function, or care for Q.N.[1] Respondent was taken to the hospital for treatment. DCFS took Q.N. into protective custody and placed Q.N. into foster care.

¶ 5    Later that same month (October 2020), the State filed a juvenile petition in the trial court alleging that Q.N. was a neglected minor because she had been subjected to an injurious environment. Respondent and Carl were given court-appointed attorneys to represent them in the juvenile court proceedings, and they subsequently filed answers stipulating that the State could prove certain portions of the neglect petition.[2]

---

[1] A second minor child, C.N., was also with respondent at the time and went through the same juvenile court proceedings as those described here. C.N.'s case was addressed in a separate appeal. See *In re C.N.*, 2021 IL App (3d) 210395-U. ¶ 4.

[2] We have taken judicial notice of the record in respondent's other appeal (respondent's appeal of

¶ 6        In January 2021, adjudicatory and dispositional hearings were held on the neglect petition. Based upon respondent's and Carl's stipulations and a proffer by the State, the trial court found that Q.N. was a neglected minor, that respondent was unfit due to unresolved substance abuse and domestic violence issues, and that Carl was fit.[3] The trial court made Q.N. a ward of the court and named DCFS Q.N.'s guardian. Respondent and Carl were ordered to complete certain tasks to facilitate the return of Q.N., and DCFS was given discretion to start the process of returning Q.N. to, or placing Q.N. in, Carl's home, if Carl was compliant with services and no safety issues were found.

¶ 7        In March 2021, Q.N. was returned to Carl's home with Carl and his wife. The following month, the first permanency review hearing was held. In preparation for the hearing, the DCFS caseworker prepared a written permanency review report. The report indicated, among other things, that Q.N. was doing well living in Carl's home. The caseworker recommended in her report that Carl be named guardian of Q.N. and that the case be closed. After conducting the permanency review hearing (presumably), the trial court removed DCFS as Q.N.'s guardian and named Carl the guardian of Q.N. The trial court did not close the case at that time, however, because respondent requested additional time to try to attain parental fitness. The trial court, therefore, set the case for a second permanency review hearing.

_____

the case closure order entered in the juvenile court proceedings for her other minor child) to the extent necessary to rule upon this appeal in a fair manner. See *People v. Jimerson*, 404 Ill. App. 3d 621, 634 (2010) (indicating that the reviewing court may take judicial notice of public records and other judicial proceedings and taking judicial notice of the record in a codefendant's appeal where the defendant and codefendant had received severed, but simultaneous, jury trials).

[3] The neglect petition alleged that Carl previously had his parental rights terminated, but the State struck that allegation from the petition, and there is some indication in the record that the allegation was incorrect.

¶ 8    The second permanency review hearing took place in August 2021. In preparation for the hearing, the caseworker prepared a written permanency review report. The report indicated that Carl had separated from his wife and had moved to Chicago with Q.N. Carl and Q.N. were living with Carl's girlfriend and his girlfriend's daughter. DCFS had checked and was apparently satisfied with Carl and Q.N.'s new living arrangement. Q.N. continued to do well in her placement with Carl. Among other things, the caseworker recommended in her report that Carl continue to be the guardian of Q.N., that wardship of Q.N. be terminated, and that Q.N.'s case be closed. After conducting the hearing, the trial court terminated wardship and closed Q.N.'s case, noting in the written order that Q.N. had been reunified with Carl and that respondent remained an unfit parent. The trial court's order also indicated that respondent was present in court for the hearing and was represented in court by her attorney. Respondent appealed.

¶ 9                                              II. ANALYSIS

¶ 10    On appeal, respondent argues, although somewhat implicitly, that the trial court erred in terminating wardship and closing Q.N.'s case (entering the case closure order). More specifically, respondent asserts that she was denied her right to be present in court for the case closure hearing. According to respondent, she was present at the courthouse at the time of the hearing but, due to COVID-19 procedures and a mistake on everyone's part, was never called into the courtroom when the hearing took place. Thus, respondent contends that Q.N.'s case was closed without respondent being given an opportunity to be present for the hearing and to exercise her rights as required by section 1-5(1) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-5(1) (West 2020)). Respondent asks, therefore, that we reverse the trial court's case closure order and that we remand this case for further proceedings.

4

¶ 11    The State argues that the trial court's ruling was proper and should be upheld. The State asserts that respondent has failed to prove that any error took place because respondent's claim that she was not present for the case closure hearing is not supported in any way by any record made in the trial court, is rebutted by the record on appeal, and is based solely upon a hearsay statement made by respondent to her appellate counsel (not the same attorney who represented respondent in the trial court). The State asks, therefore, that we affirm the trial court's judgment.

¶ 12    A trial court's dispositional order will not be reversed on appeal unless the trial court's factual findings were against the manifest weight of the evidence or the trial court committed an abuse of discretion by selecting an inappropriate dispositional order. *In re A.S.*, 2014 IL App (3d) 130163, ¶ 21. The statute that respondent relies upon in this case, section 1-5(1) of the Act, provides, in pertinent part as follows:

> "the minor who is the subject of the proceeding and his or her parents *** who are parties respondent have the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files and records and also, although proceedings under this Act are not intended to be adversary in character, the right to be represented by counsel."
>
> 705 ILCS 405/1-5(1) (West 2020).

Pursuant to that statute, therefore, a parent who is a party respondent in a juvenile court case has a right to be present in court for the proceedings involving his or her children. *Id.* A claim of error regarding the right to be present, however, like any other claim of error on appeal, must be supported by the record. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984) (recognizing that the appellate court must have before it the record to review so that it can determine whether the error claimed by the appellant actually occurred); see also Ill. S. Ct. R. 341 (h)(6), (h)(7) (eff.

Oct. 1, 2020) (requiring citations to the record for both the statement of facts and arguments sections of the appellant's brief). The appellant bears the burden on appeal to present a sufficiently complete record of the proceedings in the trial court to support his or her claim of error. *Foutch*, 99 Ill. 2d at 391. Absent such a record, the appellate court will presume that the trial court's ruling had a sufficient factual basis and was in conformity with the law. *Id.* at 392. Any doubts that arise from the lack of a complete record must be resolved against the appellant. *Id.*

¶ 13 In the present case, respondent failed to present any record on appeal that established or supported her claim that she was not present in court for the case closure hearing. Respondent did not present a report of proceedings, agreed statement of facts, or bystander's report for the case closure hearing and provides no explanation on appeal for the absence of those documents. In addition, the trial court's written order from the case closure hearing (the case closure order) specifically states that respondent was present in court for the hearing and was represented at the hearing by her attorney. Although respondent apparently told her appellate attorney that she was never brought into the courtroom for the case closure hearing, that statement is not contained anywhere in the record on appeal and may not be considered by this court. See *Maxton v. Garegnani*, 255 Ill. App. 3d 291, 299 (1994) (indicating that allegations that are contained within a brief but are entirely outside the record cannot be considered on appeal). Therefore, despite respondent's request, we have no need to interpret the applicable statute to determine what would have been required in this case and during a time of COVID-19 restrictions with regard to the right to be present. Such an inquiry is unnecessary because respondent has failed to establish through the record on appeal that her claimed error actually occurred.

¶ 14 III. CONCLUSION

6

¶ 15        For the foregoing reasons, we affirm the judgment of the circuit court of Peoria County.

¶ 16        Affirmed.