NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 240451-U

NO. 4-24-0451

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 24, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.S., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Peoria County |
| Petitioner-Appellee, | ) | No. 23JA188 |
| v. | ) | |
| Rajanae M., | ) | Honorable |
| Respondent-Appellant). | ) | David A. Brown, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Presiding Justice Cavanagh and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Pursuant to *Anders v. California*, 386 U.S. 738 (1967), the appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment.

¶ 2    In January 2024, the trial court entered an order adjudicating the minor, A.S. (born September 2023), neglected and a dispositional order finding respondent, Rajanae M., unfit for some reason other than financial circumstances alone to care for, protect, train, or discipline the minor. Respondent appealed, and counsel was appointed to represent her. Appellate counsel has now filed a motion for leave to withdraw with a supporting brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), on the basis that this case presents no potentially meritorious issues for review. We agree, grant appellate counsel's motion to withdraw, and affirm the court's judgment.

¶ 3                               I. BACKGROUND

¶ 4                                  A. Procedural History

¶ 5        On September 18, 2023, the State filed a petition for adjudication of wardship, alleging A.S. was a neglected minor pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2022)). The State alleged A.S.'s environment was injurious to his welfare because respondent was hospitalized on September 3, 2023, due to suicidal and homicidal ideation, including statements that she wanted to kill her unborn child. A.S. was subsequently born on September 12, 2023. In an interview conducted on September 12, 2023, respondent asserted her previous statements were misunderstood because she was having a bad day and thought she was in labor. Respondent also denied having any previous psychiatric diagnosis, taking any psychiatric medication, or previously attempting to harm herself or others.

¶ 6        The State's petition alleged the September 3, 2023, hospital admission records indicated emergency medical technicians (EMTs) observed respondent screaming, stating she was going to kill her baby, and striking her boyfriend in the face during an argument. The petition further alleged respondent's medical records indicated she had prior hospital admissions, including for (1) panic attacks and suicidal ideation with plans to drink bleach in December 2022, (2) waving a knife toward police officers and EMTs in May 2020, and (3) suicidal and homicidal ideation involving cutting herself and planning to shoot her father in August 2019.

¶ 7        The trial court conducted a shelter care hearing on September 19, 2023. The court appointed counsel for respondent and placed temporary custody of the minor with the Illinois Department of Children and Family Services (DCFS), with the right to place. The court's order states respondent did not object to the minor being placed in shelter care.

- 2 -

¶ 8 On October 16, 2023, respondent filed an answer to the State's petition for adjudication of wardship. Respondent stipulated that the State would call witnesses to support the allegation that A.S. was born on September 12, 2023, and the allegations concerning her statements during the interview that same day. Respondent denied the State's allegations that she was hospitalized on September 3, 2023, due to suicidal and homicidal ideation and that EMTs observed her strike her boyfriend in the face. With respect to the State's allegations regarding her hospital admission records from September 3, 2023, and her medical records from prior hospital admissions, respondent answered that she "lacks sufficient knowledge to either admit or deny the allegations *** but *demands* strict proof thereof." (Emphasis in original.) Respondent further answered she "does not recall signing any release that would have allowed the State to access her confidential medical records and, if such information was not obtained legally, would ask to strike" the allegations related to any previous hospital admission.

¶ 9 B. Adjudicatory Hearing

¶ 10 At the adjudicatory hearing on January 9, 2024, Peoria police officer Robert Allen testified he responded to a call and observed respondent screaming and walking away from emergency responders. He observed respondent screaming loudly and telling the emergency responders to get away from her. Allen testified it was a "really prolonged call," with respondent screaming and eventually walking into an apartment. Allen described the screaming as "almost maniacal," and he observed respondent appeared to be pregnant.

¶ 11 When he was unable to communicate with respondent, Allen called Emergency Response Services because they assist with people experiencing a mental health crisis. Respondent was in the bathroom of the apartment when Emergency Response Services arrived, still screaming short, one-word statements. Respondent eventually came out of the bathroom,

stated she did not care and would kill the baby, sat down on the couch, and waved her arms frantically while still screaming. While waving her arms, respondent hit her boyfriend in the head. Allen and another officer secured respondent's arms to prevent anyone else from being hit and escorted respondent to an ambulance. Allen followed the ambulance to the hospital, where respondent was taken to the labor and delivery floor.

¶ 12        Following Allen's testimony, the State rested and moved for a judgment based on the pleadings and the testimony. Respondent declined to present any evidence and maintained the State failed to prove the allegations of the petition.

¶ 13        In reviewing the pleadings, the trial court noted respondent, in her answer, demanded strict proof of the State's allegations regarding her hospital admission in this case and its allegations regarding her previous hospital admissions. The court asserted the demand for strict proof is not a proper pleading. Respondent was required to either admit or deny the allegations. If an admission or denial was not possible, respondent was required to submit an affidavit stating the reason she could not admit or deny the allegations. Respondent did not submit an affidavit explaining her failure to admit or deny the allegations. Therefore, the court concluded the pleadings resulted in an admission of those allegations.

¶ 14        However, the trial court then found the State's allegations regarding respondent's previous hospital admissions were not proven because they were not supported by evidence presented by the State. The court found the remainder of the petition was proven by a preponderance of the evidence based on Officer Allen's testimony and respondent's partial stipulation. Accordingly, the court ruled the State had proven the material allegations of its petition and found the minor neglected due to an environment injurious to his welfare.

¶ 15                        C. Dispositional Hearing

- 4 -

¶ 16        The case proceeded immediately to a dispositional hearing. The trial court asserted it had reviewed a dispositional hearing report and an integrated assessment prepared by the caseworker. The dispositional hearing report indicated respondent had been diagnosed with cannabis use disorder and the caseworker observed a strong odor of marijuana in the home when she met with respondent. The report also detailed an extensive history of domestic violence in respondent's relationship with the minor's father and noted respondent had not consistently attended visits with the minor. The report concluded respondent had not demonstrated the ability to meet minimum parenting standards and required additional time to engage in and complete services prior to returning the minor to her care. The dispositional hearing report recommended the minor remain in DCFS's care given the parents' current inability to provide a safe and stable home environment.

¶ 17        The integrated assessment provided that respondent was 19 years old and the minor was her only child. She had a history of mental health issues, with several hospitalizations, had been prescribed psychotropic medication, had a history of substance abuse, and had a history of domestic violence in her relationship with the minor's father, resulting in numerous police reports. Respondent did not consistently attend scheduled visits with the minor. The integrated assessment recommended respondent complete a psychological assessment, individual counseling, domestic violence education, parenting education, and submit to random drug screenings.

¶ 18        The trial court then asked Children's Home caseworker Carma Kimber if she had any additions or corrections to the reports. Kimber explained that she was recently assigned to the case. When she first met with respondent, Kimber noticed respondent had a black eye.

Respondent asserted the minor's father hit her the night before, causing the injury. The parties did not present any further evidence at the dispositional hearing.

¶ 19　　　　　Following the parties' arguments, the trial court found respondent unfit and that it was in the minor's best interest to be made a ward of the court. The guardianship administrator of DCFS was named the minor's guardian, with the right to place. The court ordered respondent to complete a psychological evaluation and to follow all recommendations, successfully complete counseling, a domestic violence course, and parenting classes, submit to random drug screenings, and attend visits as scheduled with the minor.

¶ 20　　　　　　　　　　　　　D. Motion To Reconsider

¶ 21　　　　　On February 2, 2024, respondent filed a motion to reconsider and vacate the trial court's adjudicatory and dispositional orders. Respondent asserted, *inter alia*, that the court erred by ruling her answer, which stated she lacked sufficient knowledge to either admit or deny but demanded strict proof of certain allegations, resulted in an admission of those allegations. Thus, respondent claimed the court erred by finding she admitted allegations regarding her hospital admission records in this case and her previous hospital admissions. Respondent argued that without those admissions, the State failed to prove the minor was neglected by a preponderance of the evidence. Accordingly, respondent asked the court to vacate its adjudicatory and dispositional orders.

¶ 22　　　　　The trial court determined it correctly found respondent's answer resulted in the admission of the contested allegations. The court further explained that it relied on the other evidence presented at the hearing, in addition to respondent's answer to the petition, in finding her unfit. The court, therefore, denied respondent's motion to reconsider and vacate its prior orders.

¶ 23     This appeal followed.

¶ 24                              II. ANALYSIS

¶ 25     The trial court appointed counsel to represent respondent on appeal. Respondent's appellate counsel has now filed a motion to withdraw in compliance with *Anders*. See *In re J.P.*, 2016 IL App (1st) 161518, ¶ 8, 65 N.E.3d 1009 (finding *Anders* applies when counsel seeks to withdraw from representation on direct appeal from orders affecting parental rights under the Juvenile Court Act). Under the applicable procedure, appellate counsel's request to withdraw must " 'be accompanied by a brief referring to anything in the record that might arguably support the appeal.' " *In re S.M.*, 314 Ill. App. 3d 682, 685, 732 N.E.2d 140, 143 (2000) (quoting *Anders*, 386 U.S. at 744). Appellate counsel must "(a) sketch the argument in support of the issues that could conceivably be raised on appeal, and then (b) explain why he believes the arguments are frivolous." *Id.*

¶ 26     In her supporting brief, appellate counsel contends there are no potentially meritorious issues for review in this case. Counsel identifies the following as potential issues for review: (1) whether the trial court erred by treating respondent's answer, which claimed a lack of sufficient knowledge to admit or deny allegations in the State's petition, as an admission of those allegations; (2) whether the court's decision adjudicating A.S. neglected due to an injurious environment was against the manifest weight of the evidence; and (3) whether the court's dispositional order making the minor a ward of the court was against the manifest weight of the evidence. Appellate counsel has explained in her brief the reasons each of the potential arguments would be frivolous.

¶ 27     Appellate counsel has provided proof of service of her motion and supporting brief on respondent, and this court granted respondent the opportunity to file a response.

Respondent has not filed a response. Because we agree that the appeal of this case presents no potentially meritorious issues for review, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 28                          A. Respondent's Answer to the Petition

¶ 29                               1. *The Applicable Law*

¶ 30         Section 2-610(a) of the Code of Civil Procedure (Code) provides that "[e]very answer and subsequent pleading shall contain an explicit admission or denial of each allegation of the pleading to which it relates." 735 ILCS 5/2-610(a) (West 2022). With limited exceptions not applicable here, "[e]very allegation *** not explicitly denied is admitted, unless the party states in his or her pleading that he or she has no knowledge thereof sufficient to form a belief, and attaches an affidavit of the truth of the statement of want of knowledge." *Id.* § 2-610(b). The failure to explicitly deny a specific allegation in a civil complaint will be considered a judicial admission and will dispense with the necessity to submit proof on the issue. *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 37, 2 N.E.3d 1052.

¶ 31                                  2. *This Case*

¶ 32         Here, the State alleged, in pertinent part, that respondent's hospital admission records indicated EMTs observed her screaming, stating she was going to kill her baby, and striking her boyfriend in the face during an argument. The State's petition separately alleged respondent's medical records indicated she had prior hospital admissions involving panic attacks, suicidal ideation, and homicidal ideation. In answering those allegations, respondent asserted she "lacks sufficient knowledge to either admit or deny the allegations *** but *demands* strict proof thereof." (Emphasis in original.) However, respondent did not attach an affidavit to establish the truth of her statement that she lacked sufficient knowledge of the allegations, as required by

- 8 -

section 2-610(b) of the Code (735 ILCS 5/2-610(b) (West 2022)). Respondent's failure to attach a lack of knowledge affidavit resulted in her admission of the allegations at issue. See *Parkway Bank & Trust Co.*, 2013 IL App (1st) 130380, ¶ 38 (stating defendants admitted an allegation in plaintiff's complaint by stating they lacked knowledge sufficient to answer without including the required lack of knowledge affidavit).

¶ 33 Additionally, as explained below, the testimony presented by the State at the adjudicatory hearing was sufficient to support the trial court's finding of neglect, even without considering any admissions by respondent to the allegations of the petition. Accordingly, the court's decision on the petition for adjudication of wardship would not have been affected even if respondent's answer had resulted in a denial of the relevant allegations.

¶ 34 B. Adjudication of Neglect

¶ 35 1. *The Applicable Law*

¶ 36 The Juvenile Court Act sets forth a two-step process for deciding whether a minor should be removed from the parents' custody and made a ward of the court. *In re A.P.*, 2012 IL 113875, ¶ 18, 981 N.E.2d 336. The first step is the adjudicatory hearing, where the trial court considers only whether the minor is abused, neglected, or dependent. *Id.* ¶ 19 (quoting 705 ILCS 405/2-18(1) (West 2010)). If the court determines a minor is abused, neglected, or dependent, it proceeds to the second step, the dispositional hearing. *Id.* ¶ 21 (citing 705 ILCS 405/2-21(2) (West 2010)).

¶ 37 Section 2-3(1)(b) of the Juvenile Court Act defines a neglected minor to include "any minor under 18 years of age *** whose environment is injurious to the minor's welfare." 705 ILCS 405/2-3(1)(b) (West 2022). An "injurious environment" generally includes the breach of a parent's duty to provide his or her children with a safe and nurturing shelter. *In re Arthur H.*,

212 Ill. 2d 441, 463, 819 N.E.2d 734, 747 (2004). Neglect cases are "*sui generis*, and must be decided on the basis of their unique circumstances." *Id.*

¶ 38        The State bears the burden of proving allegations of neglect by a preponderance of the evidence. *In re Z.L.*, 2021 IL 126931, ¶ 61, 190 N.E.3d 193. A trial court's finding of neglect will not be disturbed on appeal unless it is against the manifest weight of the evidence. *A.P.*, 2012 IL 113875, ¶ 17. A finding of neglect is against the manifest weight of the evidence if the opposite conclusion is clearly evident. *Id.*

¶ 39                                        2. *This Case*

¶ 40        Based on this record, we agree with appellate counsel that no claim of arguable merit can be raised challenging the trial court's adjudication of neglect. The relevant facts supporting the court's decision were supplied by Officer Allen's testimony. He testified that he observed respondent screaming "almost maniacal[ly]" and walking away from emergency responders and into an apartment. Respondent entered a bathroom in the apartment and remained there, screaming short, one-word statements. When she eventually came out of the bathroom, respondent stated she did not care and would kill the baby, sat down on the couch, and waved her arms frantically while still screaming. She hit her boyfriend in the head as she was waving her arms. Respondent was then restrained and taken to the hospital by ambulance.

¶ 41        Officer Allen's testimony was sufficient for the trial court to conclude the minor was subjected to an environment injurious to his welfare. The State's allegations about the hospital admission records related to this incident were essentially cumulative of Allen's testimony that respondent was screaming, stated she was going to kill her baby, and struck her boyfriend in the head. Based on this evidence, the court found the minor neglected. The opposite

conclusion is not clearly evident. We conclude any argument that the court's adjudication of neglect was against the manifest weight of the evidence would be frivolous.

¶ 42                                    C. Dispositional Order

¶ 43                                    1. *The Applicable Law*

¶ 44            At the dispositional hearing, the trial court determines whether the best interests of the minor and the public require making the minor a ward of the court. 705 ILCS 405/2-22(1) (West 2022). In considering wardship, the court must decide whether the parent is unfit, unable, or unwilling, for reasons other than financial circumstances alone, to care for, protect, train, or discipline the child, and whether the health, safety, and best interest of the child will be jeopardized if the child remains in the parent's custody. *Id.* § 2-27(1). A trial court's dispositional order will not be overturned on appeal unless its findings of fact are against the manifest weight of the evidence or it abused its discretion by selecting an inappropriate dispositional order. *In re A.S.*, 2014 IL App (3d) 130163, ¶ 21, 9 N.E.3d 615.

¶ 45                                    2. *This Case*

¶ 46            The trial court's finding that respondent was unfit, unable, or unwilling to care for the minor is not against the manifest weight of the evidence. The evidence presented at the dispositional hearing indicated respondent had a history of mental health issues, substance abuse issues, and domestic violence. The dispositional hearing report indicated respondent required additional time to complete services addressing those issues before returning the minor to her care. The report stated respondent had not established an ability to meet minimum parenting standards and was currently unable to provide a safe and stable home environment. Those findings are supported by the evidence presented in this case, including Officer Allen's testimony. Based on the evidence, the court found respondent unfit and that it was in the minor's

- 11 -

best interest to be made a ward of the court. We agree with appellate counsel any argument that the court's dispositional order was against the manifest weight of the evidence would be frivolous.

¶ 47                                    III. CONCLUSION

¶ 48          For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 49          Affirmed.