NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240719-U

NO. 4-24-0719

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 30, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* D.B, A Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Lee County |
|     Petitioner-Appellee, | ) | No. 23JA37 |
|     v. | ) | |
| Amy P., | ) | Honorable |
|     Respondent-Appellant). | ) | Theresa M. Friel-Draper, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Lannerd and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in finding respondent unfit and determining the biological father was willing and able to care for the minor.

¶ 2    Respondent Amy P. appeals from the trial court's dispositional judgment where the court declined to make the minor a ward of the court; found respondent unfit; found the minor's father Jeremy B. fit, willing, and able to care for the minor; and closed the case. On appeal, respondent argues the court's decisions were against the manifest weight of the evidence. For the reasons that follow, we affirm.

¶ 3                    I. BACKGROUND

¶ 4    In November 2023, the State filed a four-count petition for adjudication of wardship of D.B. (born 2012) and his stepsisters, alleging the minors were abused (705 ILCS 405/2-3(2)(i), (v) (West 2022)) and neglected (*id.* § 2-3(1)(b)) in that respondent intentionally inflicted physical

harm upon them and used excessive corporal punishment. The petition further alleged that the minors lived in an injurious environment where D.B. and his stepsisters were abused by respondent and D.B.'s stepfather was aware of the abuse and allowed it. The stepsisters, their biological mother, and the stepfather are not parties to this appeal. The trial court held a shelter care hearing and granted temporary custody of the minors to the Illinois Department of Children and Family Services (DCFS). The court found Jeremy B. to be D.B.'s father and scheduled an adjudicatory hearing on February 26, 2024.

¶ 5        Prior to the adjudicatory hearing, respondent stipulated to count two of the petition that alleged D.B. was abused (*id.* § 2-3(2)(v)). The stipulation stated that D.B.'s stepsister went to the school nurse complaining of an injury to her head from respondent pulling her hair "hard" because she was not getting ready for school fast enough. Subsequent forensic interviews with D.B. and his stepsisters revealed "abuse at the hands of [respondent], including hair pulling, covering up mouths with hands where they could not breathe, whopping [*sic*] with a studded belt in an uncontrolled manner, putting the children's hands in burning water, and holding up against a wall by their neck with feet not touching the floor," in addition to emotional and verbal abuse. The Lee County Sheriff's Department interviewed respondent, and she admitted to grabbing the children by their hair, striking them with her hands as punishment, and striking them with a belt. She was charged with five counts of domestic battery as the result of the county sheriff's investigation. In exchange for the stipulation, the State dismissed the remaining counts in the petition and agreed that the stipulation could not be used against respondent in the prosecution of the domestic battery counts. In February 2024, the trial court accepted the stipulation and found that the State had proven the allegations in the petition based on the facts in the stipulation.

¶ 6        At a subsequent dispositional hearing, reports were filed with the court and caseworker Allison Holcomb testified as the only witness. Holcomb testified that respondent was cooperative with DCFS and had been engaged in psychiatric care prior to the start of the case. Respondent had completed all required assessments, except for drug and alcohol, and had been referred to providers for the remaining services, but none had been completed at that time. Respondent had attended all scheduled visits with D.B., except for one that was canceled by DCFS and subsequently rescheduled. Respondent was generally "loving and appropriate" during visitation with the minor.

¶ 7        Jeremy B. was also cooperative with DCFS and completed an integrated assessment. No services were recommended prior to Jeremy B. being found fit, able, and willing to care for D.B., but DCFS did recommend that he engage in services to facilitate the relationship with the minor. Jeremy B. and D.B. had been having telephonic visits following D.B.'s removal from respondent's home. D.B. had last seen his father in June 2023, when he, along with his brother, spent a month during the summer in Wisconsin at his father's home. At times, D.B. had been hesitant to participate in the phone calls and went "back and forth" on whether he wanted to live with Jeremy B. Since the father lived in Wisconsin, no one from DCFS had visited the home, and it was unknown whether he had engaged in the recommended services. The father was employed, and he reported that he had stable living arrangements and that other children lived in his home, including D.B.'s older brother. Jeremy B. expressed a desire for D.B. to be placed with him. D.B. had been moved twice to different placements since he was placed into care, and the caseworker supported D.B. being placed with Jeremy B.

¶ 8        During closing arguments, both the State and the guardian *ad litem* (GAL) recommended that D.B. be placed with his father and the case as to him be closed. Respondent

objected to D.B. being placed with Jeremy B. and requested that the trial court reserve its ruling on Jeremy B.'s fitness and make D.B. a ward of the court pending further investigation. Specifically, counsel argued there was "no evidence of [Jeremy B.'s] willingness" to care for D.B.

¶ 9 The trial court found respondent was unfit and unable to parent D.B. and also declined to make the minor a ward of the court. The court found Jeremy B. fit, able, and willing to parent the minor and placed custody and guardianship of D.B. with him, vacating the prior temporary custody and guardianship order. The court then closed the case.

¶ 10 This appeal followed.

¶ 11 II. ANALYSIS

¶ 12 On appeal, respondent argues that the trial court erred in finding that (1) she was unfit and (2) Jeremy B. was able and willing to care for D.B.

¶ 13 At the dispositional hearing, the trial court determines whether it is in the best interest of the minor and the public to make the minor a ward of the court and whether the parents are unfit, unwilling, or unable to care for the minor. *In re M.M.*, 2016 IL 119932, ¶ 18; *In re A.P.*, 2012 IL 113875, ¶ 21; 705 ILCS 405/2-22(1) (West 2022). The party requesting the dispositional finding of unfitness must show by a preponderance of the evidence that a parent is unable to care for, protect, train, or discipline the child. *In re L.W.*, 2021 IL App (5th) 200311, ¶ 33. The best interest of the child is the trial court's overriding concern in fashioning a dispositional order. *In re M.P.*, 408 Ill. App. 3d 1070, 1073 (2011). A trial court's dispositional order will not be disturbed on appeal unless its findings of fact are against the manifest weight of the evidence or it abused its discretion by selecting an inappropriate dispositional order. *In re A.S.*, 2014 IL App (3d) 130163, ¶ 21. A court's finding is against the manifest weight of the evidence when the opposite conclusion is clearly evident. *In re Al. S.*, 2017 IL App (4th) 160737, ¶ 41. We afford great

deference to the court's dispositional findings, as "it is in a better position to observe the witnesses, assess credibility, and weigh the evidence." *Id.* "An abuse of discretion occurs when the trial court's ruling is fanciful, unreasonable, or when no reasonable person would adopt its view." *In re Dal. D.*, 2017 IL App (4th) 160893, ¶ 31.

¶ 14 In this case, the trial court's finding that respondent was unfit was not against the manifest weight of the evidence. Respondent points to the fact that she had cooperated with DCFS, engaged in counseling, and completed the assessments necessary to receive referrals for services. While her cooperation is commendable, respondent was engaged in counseling when the actions that formed the basis of this case occurred. The facts contained in the record detailing, among other things, the abuse respondent inflicted upon the minors in this matter supports the court's finding that she was not fit to care for D.B. On this record, a conclusion contrary to that of the court below is not clearly evident. *Al. S.*, 2017 IL App (4th) 160737, ¶ 41.

¶ 15 Respondent also argues that the trial court erred in finding that Jeremy B. was willing and able to care for the minor. To be clear, Jeremy B. is not alleged to have inflicted any of the abuse or neglect alleged in this case. Instead, respondent relies on the absence of evidence that Jeremy B. was willing and able to care for the minor, rather than evidence of record to the contrary. However, as mentioned above, the burden of proof that a parent is not fit, able, or willing to care for a minor is on the party seeking such a ruling.

¶ 16 Here, Jeremy B. cooperated with DCFS and expressed a desire and willingness for D.B. to live with him and D.B.'s older brother. He participated in telephonic visitation, and the integrated assessment he completed did not require him to complete services in order to become fit. Respondent points to the recommended services and the testimony that it was unknown whether Jeremy B. had completed those services in arguing that the court's ruling was premature where

Jeremy B. could not "render mental and emotional support," and therefore the minor's "mental health and emotional needs were put at risk of endangerment." This argument is insufficient to carry respondent's burden, as the caseworker testified that those services were not required in order for Jeremy B. to care for D.B. Moreover, the caseworker, the State, and the GAL recommended that the minor be placed with his father.

¶ 17　　　　Respondent further argues that at a minimum, the trial court should have reserved its ruling on Jeremy B.'s fitness until a more thorough investigation could occur. However, Jeremy B. was not the focus of the case and was presumed fit, willing, and able to care for D.B. absent sufficient evidence to the contrary. See *Parham v. J.R.*, 442 U.S. 584, 602-03 (1979). There is no evidence respondent points to rebutting that presumption. Rather, her argument relies on the supposition that not enough of an investigation was undertaken to ensure the fitness of the nonoffending parent, which is insufficient. See *M.M.*, 2016 IL 119932, ¶ 26 ("[S]o long as a parent [is fit], there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." (Internal quotation marks omitted.)). While the trial court undoubtedly had the ability to reserve its ruling regarding Jeremy B. and continue the dispositional hearing (705 ILCS 405/2-22(4) (West 2022)), we are unable to find that failing to do so was an abuse of discretion (*Al. S.*, 2017 IL App (4th) 160737, ¶ 41).

¶ 18　　　　Accordingly, the trial court's determination that respondent was unfit was not against the manifest weight of the evidence, and the court did not abuse its discretion in its selection of a dispositional order.

¶ 19　　　　　　　　　　　　　　III. CONCLUSION

¶ 20　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 21        Affirmed.